UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EDDY MORAN RAYO,

                Petitioner,

v.                                                         Case No. 25-cv-2064-bhl

SAMUEL OLSON, et al.,

                Respondents.

## ORDER DENYING PETITION FOR HABEAS CORPUS

      Petitioner Eddy Moran Rayo, who is currently detained by U.S. Immigration and Customs Enforcement officials at the Dodge County Jail in Juneau, Wisconsin, seeks a writ of habeas corpus from this Court pursuant to 28 U.S.C. §2241. On January 20, 2026, the Court screened the petition, directed the Clerk of Court to promptly serve a copy of the petition on Respondents, and ordered Respondents to respond. (ECF No. 5.) On February 4, 2026, the federal respondents filed an Answer.[1] (ECF No. 9.) The petition raises issues concerning the interplay between 8 U.S.C. §§1225 & 1226, issues that have been addressed in hundreds of district court habeas decisions from across the country. This Court has itself twice addressed these issues, and both times sided with the government, adopting the minority view and declining to grant habeas relief. *See Cirrus Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025); *Espinoza Hernandez v. Olson*, No. 25-cv-1670-bhl, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026). Since those rulings, the Fifth Circuit has become the only federal court of appeals to fully address and resolve the issues and has adopted the same reading. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Also in the interim, a Seventh Circuit motions panel, without the benefit of full briefing or oral argument, indicated it was likely to adopt the majority view. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025). For the reasons set forth in the Court's prior decisions and in *Buenrostro-Mendez*, the Court remains unpersuaded by the majority of

---

[1] Moran Rayo's actual custodian, Sheriff Dale J. Schmidt, has joined in the Answer and does not intend to submit a separate response to the petition. (ECF No. 9 at 1, n.1.)

courts' reasoning in light of the plain text of the statute. The Court continues to believe that the government's interpretation is more persuasive and will therefore deny Moran Rayo's petition.

## BACKGROUND

Moran Rayo is a Nicaraguan national who has resided in the United States since September 12, 2021. (ECF No. 1 ¶¶15, 21.) On October 15, 2021, the Department of Homeland Security (DHS) released Moran Rayo from border custody and ordered him to attend check-in appointments at the U.S. Immigration and Customs Enforcement (ICE) office in Milwaukee, Wisconsin. (*Id.* ¶23.) On November 12, 2025, Moran Rayo was arrested by DHS in Whitewater, Wisconsin. (*Id.*) Moran Rayo was served with an arrest warrant and notice to appear, the latter of which charged him, *inter alia*, with being subject to removal under 8 U.S.C. §1182(a)(6)(A)(i), as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (ECF No. 1-4 at 5; ECF 1-5.) He has been detained at the Dodge County Jail since his arrest. (ECF No. 1 ¶¶1, 23.)

According to the petition, Moran Rayo plans to seek relief from removal by applying for asylum. (*Id.* ¶¶3, 25.) The government reported that immigration hearings took place on January 12, 2026, and February 23, 2026, the second of which was a final merits hearing in Moran Rayo's removal proceedings. (ECF No. 9 at 3, 18 n.10.) Neither party has updated the Court on the results of those hearings or any further developments in Moran Rayo's removal proceedings. As far as the Court is aware, Moran Rayo remains detained at the Dodge County Jail.

## ANALYSIS

A habeas petition under 28 U.S.C. §2241 allows persons in custody to challenge the fact or duration of their confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973); *Waletzki v. Keohane*, 13 F.3d 1079, 1080 (7th Cir. 1994). The Supreme Court has recognized Section 2241 as an appropriate means for raising statutory challenges to detention orders in immigration proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).[2]

Moran Rayo seeks habeas relief under 28 U.S.C. §2241, claiming in Count One that his detention violates the Immigration and Nationality Act (INA) and in Count Two that his detention violates the Fifth Amendment's Due Process Clause. (ECF No. 1 ¶¶77–84.) Specifically, he

---

[2] While Congress has enacted multiple jurisdictional bars to a federal court's adjudication of matters entrusted to the immigration court, including limits on habeas relief, under current caselaw these barriers do not appear to prevent this Court's consideration of the issues arising here. *See Cirrus Rojas*, 2025 WL 3033967, at *4 (collecting cases).

contends that 8 U.S.C. §1225(b)(2)—providing for mandatory detention—is inapplicable to a foreign national, like him, who entered the United States without inspection and has resided in this country for a period of time. (ECF No. 1 ¶¶64–65.) Moran Rayo also contends that his detention is improper under 8 U.S.C. §1226(b) because he has not been afforded a bond hearing. (*Id.* ¶66.) Respondents' position is that, because Moran Rayo was never lawfully admitted into the United States, he is an "applicant for admission" under 8 U.S.C. §1225(a)(1) and therefore his detention is mandatory under 8 U.S.C. §1225(b)(2)(A). (ECF No. 9 at 2.)

I.  **Moran Rayo's Detention Does Not Violate the INA.**

Count I of Moran Rayo's petition alleges that his detention violates the INA. (ECF No. 1 ¶¶77–79.) The government maintains that Moran Rayo is an "applicant for admission," who is properly being detained under Section 1225(b)(2)(A), which requires his detention pending completion of his removal proceedings. (ECF No. 9 at 6–7.) The Court addressed the statutory construction issues underlying the parties' disputed positions in *Cirrus Rojas*, 2025 WL 3033967, at *5–10 and *Espinoza Hernandez*, 2026 WL 161509, at *3–6 and continues to find the government's position more persuasive. The Court acknowledges that a motions panel in *Castanon-Nava* agreed with Moran Rayo's interpretation, but that decision was rendered on an expedited basis, without full briefing and argument, and is not precedential. *See Castanon-Nava*, 161 F.4th at 1062; *see also Espinoza Hernandez*, 2026 WL 161509, at *6 (citing *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991)). In contrast, the Fifth Circuit, after a full hearing, has agreed with the government's view following a detailed analysis of the statutory text and the history of the legislation. *See Buenrostro-Mendez,* 166 F.4th at 502–506. While the Fifth Circuit's comprehensive analysis is also not binding precedent, the Court finds its reasoning persuasive and will follow its conclusions, consistent with this Court's own prior rulings.

A.  **The Government's Statutory Argument Is More Consistent with the INA.**

In *Cirrus Rojas*, the Court walked through the plain language of all subsections of both Sections 1225 and 1226 and explained that the government's position, which mirrors its arguments here, was more consistent with the statutory text. 2025 WL 3033967, at *8. As explained there, Section 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and governs the inspection, detention, and removal of aliens seeking admission into the United States. Section 1225(a)(1) begins by identifying those aliens who are to be "treated as applicants for admission." The text provides:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

8 U.S.C. §1225(a)(1). The remaining subsections of 1225(a) address the treatment of stowaways, authorize immigration officers to inspect and take statements under oath from applicants for admission, and provide applicants the right to withdraw their applications and depart from the country immediately. 8 U.S.C. §1225(a)(2)–(5).

Section 1225(b) is entitled "Inspection of applicants for admission." It mandates expedited removal proceedings for certain types of applicants for admission. Generally, if an immigration officer finds that an alien is inadmissible because of fraud or due to documentation issues, the official must order the alien removed without further hearing unless the alien indicates an intention to apply for asylum or expresses fear of persecution. *See* 8 U.S.C. §1225(b)(1)(A)(i) & (ii). The statute also authorizes the Attorney General to designate certain other aliens for similar expedited removal so long as those aliens have not been previously admitted and have not shown they were continuously physically present in the United States for the preceding two years. *See* §1225(b)(1)(A)(iii). In Section 1225(b)(1)(F), Congress carved out an exception to this expedited removal process for citizens of a "country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry."

Section 1225(b)(2)(A) then prescribes specific detention requirements. "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding" under 8 U.S.C. §1229a. 8 U.S.C. §1225(b)(2)(A). The statute also allows the Attorney General to return aliens who arrive on land from a contiguous foreign territory to that foreign territory pending removal proceedings. 8 U.S.C. §1225(b)(2)(C). The balance of Section 1225 is largely procedural, describing the process for expedited removal, review by the Attorney General, the alien's right to submit information, and the authority of immigration agents to search, detain, subpoena, and administer oaths.

Section 1226 is entitled "Apprehension and detention of aliens." Subsection (a) provides general authority to the Attorney General to issue warrants for the arrest and detention of aliens pending a decision on their removability. §1226(a). It also allows the Attorney General to

continue the detention of arrested aliens or to release them on bond or parole, with certain exceptions. *Id*. Section 1226(b) provides for the revocation of bond or parole granted under subsection (a).

Section 1226(c) mandates that the Attorney General take into custody aliens who are inadmissible or subject to removal for a variety of criminal offenses, many of which are outlined in other sections of the INA. This part of the statute was amended within the last year by the Laken Riley Act to specifically require the detention of aliens arrested for certain crimes: burglary, theft, larceny, shoplifting, assault of a law enforcement officer, or any crime that results in death or serious bodily injury.³ *See* 8 U.S.C. §1226(c)(1)(E)(ii). Finally, under Section 1226(c)(4), aliens who are subject to mandatory detention may only be paroled or released for witness protection purposes.

Against this statutory backdrop, the government contends that Moran Rayo is lawfully detained under Section 1225. The government points out that Moran Rayo was arrested while present in the United States and not lawfully admitted, making him an "applicant for admission" under Section 1225(a). Based on this fact, the government maintains that Section 1225(b) mandates Moran Rayo's detention because no examining immigration officer has determined that he is "clearly and beyond a doubt entitled to be admitted" and because he is present in the United States without having been admitted or paroled, as evidenced by his anticipated asylum application, he is therefore inadmissible per 8 U.S.C. §1182(a)(6) and (a)(7)(A)(i)(I), such that his detention is mandatory. *See* 8 U.S.C. §1225(b)(2)(A); (ECF No. 9 at 8); *see Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (explaining that Sections 1225(b)(1) and (b)(2) "mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin.").

As explained in *Buenrostro-Mendez,* the context in which both sections of the statute were adopted supports this reading. Congress enacted both 8 U.S.C. §1225(b)(2) and 8 U.S.C. §1226(a) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). The IIRIRA was intended to "reduce [the] incongruity" of illegal aliens "who have entered the United States without inspection," gaining "equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection." *Buenrostro-Mendez*, 166

---

³ The Laken Riley Act also amended Section 1225(b) to authorize State Attorney General enforcement powers. *See* 8 U.S.C. §1225(b)(3).

F.4th at 488–89 (quoting H.R. Rep. No. 104-469, pt. 1, at 225 (1996). Before passage of the IIRIRA, "[a]liens who arrived at a port of entry were subject to mandatory detention until the conclusion of the exclusion process and could not request release on bond." *Id.* at 498. By contrast, "aliens who evaded inspection and were apprehended months or years later could seek release on bond pending deportation proceedings." *Id.* This structure led to an incongruous result: foreign nationals who had lawfully appeared at a port of entry for inspection but were deemed inadmissible were ineligible for release on bond, while those who surreptitiously entered the country without inspection were entitled to request release on bond. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222–225, 2025 WL 2674169, at *6–8 (B.I.A. Sep. 5, 2025) (discussing statutory history).

The passage of the IIRIRA amended the INA and replaced the previous term "entry" with the term "admission" and replaced the former "exclusion" and "deportation" proceedings with more general removal proceedings. Under Section 1225(a), any alien who enters the United States illegally, who has not been previously lawfully admitted, is "deemed for purposes of this chapter an applicant for admission." 8 U.S.C. §1225(a)(1). Under that same statute, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* §1225(b)(2)(A). As the Fifth Circuit observed, "[u]nlike §1225(b), §1226(a)(2)(A) permits, but does not require, the Attorney General to release detained aliens on 'bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General.'" *Buenrostro-Mendez*, 166 F.4th at 499 (quoting 8 U.S.C. §1226(a)(2)(A)). Accordingly, §1226(a) works independently from §1225(b)(2)(A) "because only §1226(a) applies to admitted aliens who overstay their visas, become deportable on many different grounds, or were admitted erroneously due to fraud or some other error." *Id.* at 504. Moran Rayo's interpretation would afford foreign nationals who illegally enter the country and evade detection by immigration officers greater procedural protections than those available to foreign nationals who lawfully present themselves for inspection at a port of entry. As the Fifth Circuit held, such an interpretation would not honor the IIRIRA, which sought to "put aliens seeking admission lawfully on equal footing with those who entered without inspection." *Id.* at 508 ("It seems strange to suggest that Congress would have preserved bond hearings exclusively for unlawful entrants."). Accordingly,

a person, like Moran Rayo, who entered the United States illegally and is not clearly and beyond a doubt entitled to admission, is subject to mandatory detention under §1225(b)(2)(A).

As noted above, a majority of courts have adopted an alternative reading, one that Moran Rayo proposes. According to Moran Rayo, and the analysis of a majority of district courts, he is entitled to a bond hearing under Section 1226(a)(2)(A) even though he is an applicant for admission. The Court remains unpersuaded by that reading, however. The Court acknowledges that allowing applicants for admission, like Moran Rayo, the opportunity for bond hearings, consistent with prior administrative practice, might be a kinder policy. But the statutory text simply does not, in the Court's view, provide for this result. It is not this Court's function to ignore the statutory text as written or to rewrite the statute to achieve such an end.

### B. The *Maldonado Bautista* Decision Is Not Binding and Has No Preclusive Effect.

Moran Rayo offers a new argument not presented in the Court's two prior habeas immigration cases. He contends that he is not subject to detention under 8 U.S.C. §1225(b)(2)(A) and must be afforded a bond hearing because he is a member of the class certified in *Bautista v. Noem*, --- F.Supp.3d ---, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), judgment entered *Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). (ECF No. 1 ¶¶ 59–62.) In *Bautista*, a judge in the Central District of California declared the government's interpretation of §1225(b)(2) unlawful on a class-wide basis and entered partial summary judgment in favor of the class members. *See* 2025 WL 3713987, at *12. Even if Moran Rayo is a member of this nationwide class, the *Bautista* ruling is neither binding nor applicable to a habeas case pending in this Court.

The *Bautista* class sought a declaratory judgment that class members such as Moran Rayo were unlawfully detained under 8 U.S.C. §1225(b)(2), rather than §1226(a). The nationwide declaratory relief issued in *Bautista* is in essence a universal injunction that purports to bind individuals who were not parties to that action, and the power to issue such relief "likely exceed[s] the equitable authority that Congress has granted to federal courts." *Trump v. CASA*, 606 U.S. 831, 837 (2025). As confirmed in *Trump v. CASA*, a federal district court lacks the authority to issue equitable relief as to non-parties. 606 U.S. at 850–51. The respondent in *Bautista* was the warden of the Adelanto, California detention facility, while the respondent in this action is the warden of a Dodge County, Wisconsin detention facility. The *Bautista* court's order directing the warden of the Adelanto facility to implement equitable relief cannot bind the warden of the Dodge

County facility, who was not a party to the *Bautista* action. *See CASA*, 606 U.S. at 850–51. As the Supreme Court has explained, it is an "elementary principle" that "a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it." *Gregory v. Stetson*, 133 U.S. 579, 586 (1890); *see also CASA*, 606 U.S. at 843–44.

Applying the Bautista court's order here would also contradict basic habeas corpus principles. The Supreme Court has made clear that "[r]egardless of whether [] detainees formally request release from confinement," if "their claims for relief necessarily imply the invalidity of their confinement[], . . . their claims fall within the core of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (cleaned up). And a habeas petitioner must name the petitioner's *immediate* custodian—*i.e.*, the custodian who has actual custody over the petitioner and can produce the "corpus." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). "[T]he petitioner's *immediate* custodian—the warden of the prison or other facility in which the petitioner is confined—is the only proper respondent." *Bridges v. Chambers*, 425 F.3d 1048, 1050 (7th Cir. 2005). "Failure to name the petitioner's custodian as a respondent deprives federal courts of personal jurisdiction" needed to issue relief. *Stanley v. Cal. Sup. Ct.*, 21 F.3d 359, 360 (9th Cir. 1994); *Padilla*, 542 U.S. at 444. Thus, a federal district court lacks authority to issue the writ in favor of a habeas petitioner who seeks habeas relief in a judicial district in which he is not confined, and the immediate custodian is not located. *See Padilla*, 542 U.S. at 442–43. And a judgment entered without personal jurisdiction over a defendant is void as to that defendant. *See Relational, LLC v. Hodges*, 627 F.3d 668, 671 (7th Cir. 2010).

Here, like most *Bautista* class members, Moran Rayo is confined outside of the Central District of California by immediate custodians who are also outside that district and have not been named in the lawsuit. At the time of filing this habeas petition, Moran Rayo was detained at the Dodge County Jail in Juneau, Wisconsin, which is obviously outside the Central District of California. Moran Rayo's immediate custodian is Dale J. Schmidt, the Dodge County Sheriff, and he is not a party in the Central District of California case. Consequently, subjecting Sheriff Schmidt to the judgment of the Central District of California would be inconsistent with the immediate custodian rule. *See Padilla*, 542 U.S. at 439–40; *see also Bridges v. Chambers*, 425 F.3d 1048, 1050 (7th Cir. 2005) (noting that if a petitioner could sue the prison warden's supervisor—i.e., the Attorney General—then "every federal prisoner and detained alien could file his petition either in the District of Columbia federal district or in any other federal district in

which 'a substantial part of the events or omissions giving rise to the claim occurred.'"). As such, the *Bautista* decision is not binding on this Court and does not have any preclusive effect.

## II. Moran Rayo's Detention Does Not Violate the Due Process Clause.

In Count II, Moran Rayo claims his detention violates his due process rights under the Fifth Amendment. (ECF No. 1 ¶¶80–84.) The Court summarized this issue in *Cirrus Rojas*:

> Given the caselaw and the well-defined procedures governing (and limiting) Cirrus Rojas's detention, the Court rejects his due process challenge. Consistent with *Zadvydas* and *Demore* [*v. Kim,* 538 U.S. 510 (2003)], Cirrus Rojas has a recognizable liberty interest in connection with his pre-removal detention. But as *Demore* held, and *Parra* [*v. Perryman*, 172 F.3d 954 (7th Cir. 1999)] explains, that liberty interest is limited. Cirrus Rojas is an alien who was found in the United States without authorization and is subject to removal proceedings. Consistent with federal law, he is being provided with the opportunity to oppose removal and using that opportunity to pursue an asylum claim. As explained in *Parra*, Cirrus Rojas's liberty interest is limited, and he has the key to his release in his own pocket; he can choose to accept removal to his homeland under Section 1229a.

2025 WL 3033967, at *13 (cleaned up) (citing *Parra*, 172 F.3d at 958); *see also Espinoza Hernandez,* 2026 WL 161509, *7–8. Moran Rayo is receiving the process to which he is due through his removal proceedings under 8 U.S.C. §1229a(b)(4). *See Demore*, 538 U.S. at 523 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process.") (cleaned up)). Section 1225(b)(2) does not afford Moran Rayo the ability to obtain release on bond, and the Due Process Clause does not either. *See Jennings*, 583 U.S. at 298 ("Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases."). And as the Court has noted in *Cirrus Rojas* and *Espinoza Hernandez*, the government's interest in maintaining the current procedures is significant. As the Seventh Circuit recognized in *Parra*, "the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs." 172 F.3d at 958. "The private interest here is not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country but eligible to live at liberty in his native land." *Id.* (deemphasized). Moran Rayo has not established that his detention exceeds that interest

or demonstrated that the temporary deprivation of his liberty as an unadmitted foreign national violates due process.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED** and this case is **DISMISSED with prejudice**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 3, 2026.

                                                   s/ *Brett H. Ludwig*
                                                   BRETT H. LUDWIG
                                                   United States District Judge